UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Minnesota Life Insurance Company,**   Civil No. 03-CV-4383 (DWF/SRN)
**Advantus Capital Management, Inc.,**
**Securian Financial Group, Inc.**

      **Plaintiffs,**

      v.   <u>**ORDER**</u>

**AXA Investment Mgr.,**
**Frederick "Fritz" Feuerherm and**
**Wayne Schmidt,**

      **Defendants**

---

Kathleen Mahoney, Esq., and David Wilk, Esq. on behalf of Plaintiffs

Quentin Wittrock, Esq., on behalf of Defendant AXA Investment Mgr.

Richard Ostlund, Esq., and Courtland Merrill, Esq., on behalf of Defendants Feuerherm and Schmidt

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    The above entitled matter came before the undersigned United States Magistrate Judge on Defendants Frederick "Fritz" Feuerherm's and Wayne Schmidt's Motion to Amend their Counterclaim (Doc. No. 56). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

    In this motion, Defendants Feuerherm and Schmidt seek to amend their counterclaim to assert a claim for unfair competition. In conjunction with this motion to amend, they also move to modify the Scheduling Order as it pertains to the deadline for amending the pleadings. In addition, they also

1

request leave to further depose the CEO and President of Minnesota Life, Robert Senkler, about the setting of Advantus' earning projections.

## I.   BACKGROUND

Defendants Fritz Feuerherm and Wayne Schmidt are former long-time employees of Plaintiff Advantus Capital Management, Incorporated ("Advantus"). Mr. Feuerherm held the position of vice president and served as Director of Fixed Income; Mr. Schmidt also served as a vice president and held the position of Fixed Income Portfolio Manager. During their employment with Plaintiff, Feuerherm and Schmidt contend that they did not enter into any non-compete agreements. (Defs.' Mem. Supp. Mot. to Amend at 4.)

Plaintiff Minnesota Life is an affiliate of Plaintiff Advantus. Id. Both Mr. Feuerherm and Mr. Schmidt worked in Advantus's fixed-income group and comprised part of Advantus's "Total Return Team." Id. at 5. Advantus's Total Return Team managed fixed income portfolios. Id.

Plaintiffs contend in their First Amended Complaint that in July 2003, prior to resigning from Plaintiffs' employment, Feuerherm and Schmidt attempted to broker a deal in which Defendant AXA would enter into a sub-advisor agreement with the fixed income division of Advantus. When Plaintiffs rejected the proposal, Feuerherm, Schmidt and others resigned and established a competing entity with AXA. Shortly thereafter, Plaintiffs filed suit against Defendant AXA and later added Mr. Feuerherm and Mr. Schmidt as defendants.

## II.   PARTIES' POSITIONS

Defendants Feuerherm and Schmidt argue that they should be permitted to amend their counterclaim to include a claim for unfair competition. Defendants' proposed unfair competition claim

is based on Plaintiffs' filing and prosecution of this lawsuit, as well as Plaintiffs' alleged defamation of Defendants Feuerherm and Schmidt at a series of informational meetings following their departure. (Defs.' Prop. First Am. Answer & Counterclaims at ¶¶ 31-34; 22-24.) Feuerherm and Schmidt contend that only during the course of discovery did they learn of additional facts and circumstances giving rise to this claim. Specifically, they cite to the deposition testimony of Sean O'Connell, a current Advantus employee, in which he referred to informational meetings held for Plaintiffs' senior management, at which the departure of Defendants Feuerherm and Schmidt were discussed. Therefore, in light of the discovery, Feuerherm and Schmidt argue that they have met the requisite "good cause" standard to amend their answer and counterclaim. (See, e.g., Defs.' Mem. Supp. Mot. Amend at 5-8.) Moreover, they claim to have recently sustained damage by being forced to disclose the existence of Plaintiffs' pending claims against them to the CFA Institute – an industry regulatory group. (Id. at 8.) In addition, in connection with Plaintiffs' damages claims, Feuerherm and Schmidt seek leave to depose Robert Senkler, CEO of Advantus, regarding their allegations that Plaintiffs' damages claims are inflated by bogus "adjustments." (Id. at 10-11.) Defendants argue that they have not been able to obtain this information from any other source.

      In response, Plaintiffs contend that Feuerherm and Schmidt cannot demonstrate "good cause" to justify their untimely motion to amend and that, in any event, their proposed amendment is futile. Plaintiffs argue that Feuerherm and Schmidt have no evidence to overcome the Noerr-Pennington doctrine, which generally immunizes an opponent's litigation and litigation tactics from suit. (See, e.g., Pls.' Mem. Opp. at 1-2.) Moreover, Plaintiffs assert that Defendants cannot avoid a finding of futility as to their allegations of defamation – Plaintiffs contend that these allegations are unsupported.

3

Finally, Plaintiffs argue that granting Defendants' proposed amendment would unfairly prejudice them by prolonging fact discovery and increasing their expenses. Plaintiffs therefore urge the Court to deny Feuerherm and Schmidt's motion to amend.

### III.    DISCUSSION

#### A.    Good Cause

Although leave to amend the pleadings shall be "freely given when justice so requires," where the pretrial scheduling order's deadline for amendments has passed, "a schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Fed. R. Civ. P. 15 and 16(b)(6) (emphasis added). The "good cause" standard is exacting, for it demands a showing that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b)(6), Advisory Committee Notes – 1983 Amendment. "It hardly bears mention, therefore, that 'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" Engleson v. Little Falls Area Chamber of Commerce, 210 F.R.D. 667, 668-69 (D. Minn. 2002) (citations omitted), aff'd, 362 F.3d 525 (8th Cir. 2004). Nor does the finding of good cause turn on the absence or existence of prejudice to the non-moving party. Id. Where the moving party fails to provide a demonstration of good cause, its proposed amendment may be denied. See id. at 670 (stating, "[W]e conclude that Engleson's failure to comply with the established expert disclosure deadline was not substantially justified, as we are provided with no cause, let alone good cause, for the late disclosure of that opinion evidence."). The Pretrial Scheduling Order in this case required that all motions to amend the pleadings be served by May 1, 2004.

As to the showing of good cause, the Court is satisfied that Feuerherm and Schmidt have met that burden. They refer to discovery, as well as recent disclosures that Feuerherm and Schmidt were required to make, which they claim damage their reputations. The Court is disinclined to reject this motion on a technical basis and therefore, turns to the merits of Defendants' motion.

### B. Futility of Amendment

Federal Rule of Civil Procedure 15 provides that leave to amend should be granted freely "when justice so requires." Fed.R.Civ.P. 15(a). "However, futility constitutes a valid reason for denial of a motion to amend." In re K-tel Intern., Inc. Securities Litigation, 300 F.3d 881, 899 (8th Cir. 2002), citing Knapp v. Hanson, 183 F.3d 786, 790 (8th Cir.1999). To deny a plaintiff leave to amend under Rule 15(a) based on the futility of the proposed amendment, a district court must find that the amended complaint fails to state a claim upon which relief can be granted. United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 936 (8th Cir.2001), cert. denied, 536 U.S. 925 (2002). Thus, the proposed amended counterclaim is examined using the same standard applied for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Generally, Rule 12(b)(6) does not allow the consideration of matters outside the pleading when assessing the legal sufficiency of the complaint or counterclaim: "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(b)(6). U.S. ex rel. McCauley v. Best Care Home Health, Inc., Nos. Civ. 98-1261 (RHK/SRN), Civ. 99-1207 (RHK/SRN), 2002 WL 31248025, *3 (D.Minn. Oct. 7, 2002).

### 1. Proposed Amended Counterclaim

Minnesota courts have recognized the tort of unfair competition.  See Midwest Sports Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd., 552 N.W.2d 254 (Minn. App. 1996); While "unfair competition is not a tort with specific elements," Rehabilitation Specialists v. Koering, 404 N.W.2d 301, 305 (Minn. App. 1987), slander, defamation or false representations, when proven to have been made as part of a business plan or system, may constitute unfair competition.  Bourjois, Inc. v. Park Drug Co., Inc., 82 F.2d 468, 470 (8th Cir. 1936).  Feuerherm and Schmidt contend that their unfair competition claim is premised upon allegedly defamatory statements and vexatious litigation. (Defs.' Mem. Supp. Mot. Amend at 15).

#### a. Noerr-Pennington Doctrine

In response to this motion, Plaintiffs argue that their original lawsuit constituted a valid exercise of their First Amendment right to petition, and thus, under the Noerr-Pennington doctrine, they should be immune from tort liability.  Therefore, Plaintiffs argue, because Defendants' proposed counterclaim is futile, this motion to amend to add a counterclaim should be denied.

In Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965), the Supreme Court established that the First Amendment right to petition includes a litigant's right to bring suit in state or federal court. Under the Noerr-Pennington doctrine, the act of filing a lawsuit is immune from antitrust or tort liability unless it is found to be a mere sham intended to disguise tortious or anti-competitive liability. See Noerr, 365 U.S. at 140. The Eighth Circuit has further defined the parameters of this doctrine:

> It is only where a defendant's resort to the courts is accompanied or characterized by illegal and reprehensible practices such as perjury, fraud, conspiracy with or bribery of government decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process, that the Noerr-Pennington cloak of immunity provides no protection. . . . Thus the filing of suit will fit within the "sham exception," and will give rise to tort liability, only if "clearly baseless," or if accompanied by perjury, fraud, conspiracy, bribery, misrepresentation, or other "illegal and reprehensible practices."

Surgidev Corp. v. Eye Tech., Inc., 625 F. Supp. 800, 803 (D. Minn. 1986) (following Razorback Ready Mix Concrete Co., Inc. v. Weaver, 761 F.2d 484 (8th Cir. 1985)) (citations omitted); see also Lund Industries, Inc. v. Westin, Inc., 764 F. Supp. 1342, 1345 (D. Minn. 1990) (following same authority).

While the Noerr-Pennington doctrine arose in the context of the Sherman Act and antitrust litigation, the doctrine has been adopted by the courts to apply in other contexts as well.  See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 59 (1993) ("Whether applying Noerr as an antitrust doctrine or invoking it in other contexts, we have repeatedly affirmed that evidence of anti-competitive intent or purpose alone cannot transform otherwise legitimate activity into a sham.").   Feuerherm and Schmidt do not contest that the Noerr-Pennington doctrine may be applied outside of the antitrust context.  Instead, they argue that their pleading conforms with the narrow "sham" exception to the Noerr-Pennington doctrine by alleging that Plaintiffs' lawsuit is both objectively baseless and subjectively motivated by bad faith.

A lawsuit is a "sham" if it is both (1) objectively baseless in that no reasonable litigant could expect success on the merits; and (2) subjectively motivated by bad faith. See Porous Media, 186 F.3d at1080, n.4 (citing Professional Real Estate Investors, Inc., 508 U.S. at 61-62). Moreover, "it is

7

extremely doubtful that the initiation of a single lawsuit can fit within a 'sham exception.'" Surgidev Corp. v. Eye Tech., Inc., 625 F. Supp. 800, 803 (D. Minn. 1986) (emphasis added).

As noted earlier, in a motion to amend, the Court looks to whether the proposed amended claim or counterclaim states a claim on which relief may be granted, using the standard under Fed. R. Civ. P. 12(b)(6). Even applying the Rule 12(b)(6) standard of review, which requires that the court take all well-pled allegations as true, and all reasonable inferences are drawn and viewed in the light most favorable to the party alleging the claim, see e.g., Carney v. Houston, 33 F.3d 893 (8th Cir. 1994), this Court concludes that Defendants have not stated a claim on which relief may be granted. The use of the words "mere sham" and "objectively baseless" in the proposed pleadings are insufficient to meet the requirements of an unfair competition claim, particularly in the light of the Noerr-Pennington doctrine and the narrow exception for sham litigation that courts have recognized. Courts have carved a narrow exception to such claims with good reason. Allowing a defendant to bring an unfair competition counterclaim based on what it perceives as sham or vexatious litigation could potentially open the door to an unfair competition claim anytime a litigant is displeased by the underlying lawsuit.

As to basing the unfair competition claim on allegedly defamatory statements, "defamation, which is another name for libel and slander, is an intricate tort with its own set of special rules." Bauer v. State, 511 N.W.2d 447, 449 (Minn. 1994). While the Court recognizes that the allegations of defamation support Defendants' allegations of unfair competition, a plaintiff alleging defamation must plead and prove that the defendant "(1) published a statement of fact; (2) of and concerning him; (3) which was false; and (4) damaged his reputation and lowered his estimation in community." Glenn v. Daddy Rocks, Inc., 171 F.Supp.2d 943, 947 (D. Minn. 2001); accord Bebo v. Delander, 632

N.W.2d 732, 739 (Minn. App. 2001).  Further, "[f]ederal courts favor specific pleading of defamation claims because 'knowledge of the exact language used is necessary to form responsive pleadings.'" Daddy Rocks, 171 F.Supp.2d at 947 (quoting Asay v. Hallmark Cards, Inc., 594 F.2d 692, 699 (8th Cir. 1979)); accord Bebo, 632 N.W.2d at 739.

Here, Feuerherm and Schmidt have not clearly identified the allegedly defamatory statements, but rather refer to meetings at which "management" made "false disparaging statements," including that Defendants "had stolen trade secrets and breached their fiduciary duty and duty of loyalty to the company." (Defs.' Prop. First Am. Answer & Counterclaims at ¶ 23.)   While Defendants assert that they "have reason to believe" that false statements were made (see Defs.' Mem. Supp. Mot. Amend at 8), such supposition does not rise to the level necessary to set forth a claim of unfair competition based on defamation.

Thus, based on the futility of amending to add an unfair competition counterclaim, the Court denies Defendants Feuerherm and Schmidt's motion to amend.  In addition, the Court finds that adding this claim at this stage, in light of the course of discovery, would unfairly prejudice Plaintiffs. Defendants also request that the Court modify the deadline for motions to amend the pleadings solely to allow them to add their unfair competition counterclaim.  In light of the Court's denial of the motion to amend the counterclaim, the Defendants' motion to modify the scheduling order is likewise denied.

  **C.**  **Deposition of Robert Senkler**

Feuerherm and Schmidt also move for an order requiring Minnesota Life's CEO, Robert Senkler, to appear for further deposition testimony as it pertains to the "Senkler adjustments." Feuerherm and Schmidt contend that Plaintiffs increased the earning goal projections for Advantus over

those recommended by the Advantus operations personnel themselves, allegedly in order to increase their damages claims. At the June 18, 2004 status conference in this case, the Court advised Defendants to first take Rule 30(b)(6) depositions and see if they could obtain the additional information at that time. While Mr. Senkler was previously deposed for seven hours, at which time this subject might have been addressed generally, Defendants contend that they did not have the "Senkler adjustment" documents in their possession at that time. (Defs.' Mem. Supp. Mot. Amend at 11.) Relying upon counsel's good faith representations that they have not obtained the requested information, the Court will permit Defendants to continue the deposition of Mr. Senkler, limited to the subject of the "Senkler adjustments" only, and limited to two hours.

**THEREFORE, IT IS HEREBY ORDERED that:**

**1.** Defendants Feuerherm and Schmidt's Motion to Amend their Counterclaim (Doc. No. 56) is **DENIED, in part, and GRANTED, in part**, consistent with this Order.

Dated: December 6 , 2004

                                  s/Susan Richard Nelson
                                  SUSAN RICHARD NELSON
                                  United States Magistrate Judge